NANCY HONEYMAN, Claimant-Appellant, *v.* MYRON HEINS, EXECUTOR OF THE ESTATE OF IVA PACE, Deceased, Defendant-Appellee.

(No. 11320; )

Fourth District—April 16, 1971.

Smith & Gomien, of Pontiac, (Sidney E. Smith and Roger B. Gomien, of counsel,) for appellant.

Adsit, Thompson, Strock, & Strong, of Pontiac, (Stephen Adsit, of counsel,) for appellee.

Mr. JUSTICE TRAPP delivered the opinion of the court:

Claimant, as remainderman following a life estate, asserted damages in the amount of $5000.00 for waste against the estate of the predecessor life tenant, or in the alternative, for the proceeds of a fire insurance policy. The court denied the claim and claimant appeals.

The life tenant died April 1, 1969, and the claim alleges that during the life tenancy a fire occurred in 1963 in the farm residence causing substantial damage, that the life tenant collected $2000.00 as fire insurance which would have been more than adequate to restore the residence to its original condition, but that the life tenant failed to make ordinary repairs after the fire. It is further alleged that the premises were left open, the plaster fell and the porches, fences and windows became ruined.

None of the cases cited by either party bear upon the immediate issue. *Thelin v. Hupe,* 397 Ill. 44; 72 N.E.2d 735, does note that a life tenant is liable for ordinary repairs. *Guhl v. Guhl,* 376 Ill. 100; 33 N.E.2d 185, states that a life tenant must pay taxes and prevent waste. *Consolidated Coal Co. v. Savitz,* 57 Ill.App. 659, holds that a tenant under a lease is liable for "voluntary" waste the tenant permits a stranger to commit.

The defendant's citations from *31 C. J. S. Estates (1964)* at pages 86, 87, 92, 93 and 105 do bear out his contention that a life tenant is not liable for extraordinary repairs, nor required to carry property insurance for the benefit of remaindermen. In Section 46 at p. 92, it is said:

"It has been stated, as a general rule, that the life tenant is not bound to keep the premises insured for the benefit of the remainderman or reversioner, or for his own benefit, unless there is an agreement that he shall do so, or a provision to that effect in the instrument creating the estate; but that either may insure for his own benefit, the tenant for life and the remainderman paying insurance for their respective interests. Ordinarily this is what is done, and it has been held that neither the life tenant nor the remainderman will be benefited by the other's policy."

There are authorities which assume a duty of the life tenant to insure the premises. See *Adams v. Adams,* (Court of Appeals Kentucky 1963); 371 S.W.2d 637.

In 51 Am.Jur.2d, p. 524-5, *Life Estates and Remaindermen,* § 243, the following statement appears:

"It seems clear both on principle and authority that in the absence of any contrary intention in the instrument creating a legal life estate and future interests, and where there is no specific agreement to the contrary between the parties themselves, the cost of insuring the interest of the life tenant is normally chargeable to him, and the cost of insuring the interest of the remainderman is normally chargeable to the latter."

While a variety of situations can arise as is shown in the Annot. 126 A.L.R. 336 (1940), it would appear to create more problems than it would solve to require the life tenant to insure the interest of the remainderman unless the instrument creating the estate required it. Once the duty was imposed, the question would arise as to the amount of the insurance and the risks required to be covered by the policy.

■■ In order to create a trust of the proceeds one would have to allege that more than the interest of the life tenant was insured, or that the remainderman had been led to believe that his interest was insured or some other equitable consideration.

■■ As to the allegations of neglect to make ordinary repairs, we think

the claim falls short of the definite allegations which would be required to distinguish such failure of duty from the allegations that the life tenant was required to restore the premises after the fire. No doubt certain unoccupied farm residences would not be considered worth restoring. The claimant was given an opportunity to, and did amend the claim, but did not set forth allegations connecting omission to make ordinary repairs with the deterioration of the premises. The claim does not allege that the premises were valuable, or if kept in repair would be valuable now.

The judgment of the trial court is affirmed.

Judgment affirmed.

SMITH, P. J., and CRAVEN, J., concur.